Good morning, Your Honors, and may it please the Court. Daniel Lemmer of Loyola Law School's 9th Circuit Appellate Clinic, appearing under the supervision of Mary Christine Sangaila and Jeffrey Kelman on behalf of the petitioner, Yucheng Ding. I'll be discussing the BIA's application of the wrong credibility standard for 5 minutes, and my colleague, Charles Pablico-Fernandez, will be discussing the failure to consider documentary evidence and due process issues for 7 minutes. And I'd like to reserve 3 minutes for rebuttal, please. If, at a very basic level, the job of legal analysis is to apply the facts to the law, the BIA failed on both counts here. It failed on the law side because it did not assess the IJA's credibility finding under the pre-Real ID Act legal standard that governs Mr. Ding's case. And as my colleague will discuss in more depth, it also failed to consider all of the facts because it ignored important evidence in the record. As this Court has repeatedly recognized, including in Ornelas Chavez v. Gonzalez and Hazen or v. Ashcroft, the application of the wrong legal standard is an abuse of discretion that requires reversal. And that's what happened... This is prejudicial. Exactly, Your Honor. Yes. And that's what happened here because the BIA analyzed Mr. Ding's case under the Real ID Act's Totality of the Circumstances credibility standard. Stig, excuse me, did you have a question? Well, I have a problem with the chronology of the plaintiff's story. The plaintiff testified he applied for a passport after he was released from jail. He says he was in jail from February 26th to March 18th. That's correct, Your Honor. But the passport was issued March 11th while he was purportedly in jail. Now, it may be that he applied before he went to jail and it was issued when he was in jail. But then his testimony that he applied after he got out of jail is contradicted, and that's a contradiction. Or it may be that he applied after he got out of jail but through some bizarre Chinese bureaucratic invention. It's issued on March 11th. But either of those two possibilities is not explained in the record. So why isn't he just flat out, let's say, incorrect, not say lying, incorrect in his statement that he applied for the passport after he got out of jail if the passport was indeed issued on a date when he was in jail? Perhaps, perhaps the driver of fact might say, I don't think you were in jail at all. Yes, Your Honor. This is exactly why the application of the wrong legal standard is so important to this case. Because under the Pre-Real ID Act standard, there are a few cases from this circuit in which this court held that date discrepancies exactly like this one were not significant enough and did not go to the heart of the claim enough to sustain an adverse credibility finding on their own. Well, this is pretty much to the heart of his claim, isn't it? I mean, he wants to get out of China, so he wants a passport. This passport is a very important ticket. Yes, Your Honor, but I have a point to a couple of cases where the exact same thing happened, where, yes, maybe the issue went to the heart of the claim, but it was not significant enough in this court's opinion to sustain an adverse credibility finding on its own. To the extent it goes to the question whether he was really in jail or not, that seems like it's a pretty significant gap. Your Honor, it doesn't necessarily show that he wasn't in jail at all. That was essentially speculation on the IJ's part, because as Judge Bea pointed out, there are many potential reasons that the date on the passport could be what it is. It could be he applied before he was in prison. It could be a clerical error. And that's exactly what this court pointed out in Wong v. INS. But did he bring any evidence in, or did he make any claim of any explanation for why he said he applied for the passport after he got out of jail, but it was while he was in jail? Did he give any explanation for that? He was not sure why, at least in his testimony before the BIA. But that's sort of why we need more. That's why a date discrepancy such as this one could easily be an error, and that would be why he doesn't know what happened. Well, it's not trivial. I mean, the error in the inconsistency isn't trivial. Like in Shreffa, he said a typo or a misspelling is an error. There's nothing here that suggests that that's what the issue is. This is a key issue in his argument. Your Honor, I see I'm running into my colleague's time. If I could just briefly respond to your question. This is why the BIA needs a chance to assess this under the correct legal standard. It's because the BIA has better access to evidence and their expertise that they can bring to bear on this issue under the correct standard make a more informed determination than we currently have on the record. Thank you. Good morning, Your Honors, and may it please the Court. My name is Charles Pablico-Fernandez, certified law student. I'm on behalf of the petitioner Yu-Cheng Ding, and I'll be addressing the BIA's failure to consider the documentary evidence and due process issues. The BIA viewed the IHA's adverse credibility determination as dispositive in this case, but it shouldn't have. Both the BIA and the IHA overlooked highly probative and potentially dispositive documentary evidence in the record. Had the BIA or the IHA considered this evidence, it could have impacted Mr. Ding's claims for relief in two ways. First, the documentary evidence could have had a significant impact on the adverse credibility determination. Second, the documentary evidence in the record could have potentially established Mr. Ding's claims. Mr. Fernandez? Yes. Indulge me. What documentary evidence explains the issuance of the passport on March 11th while he was in jail? Your Honor, while it's true that there's nothing in the record that can explain the passport issuance date, but the statements from Mr. Ding's wife and his co-worker do establish the fact that he was incarcerated for 20 days. Mr. Ding's wife and his co-worker both stated that the Chinese police arrested him for protecting Zonggang practitioners, which is a form of expressing political opinion as recognized by this court. And it also, like I just said, established that he was, in fact, incarcerated. They didn't really show he was persecuted. Both the letters said he was detained, but none of them corroborated that he had been beaten or otherwise mistreated. Your Honor, the fact that he was incarcerated for 20 days is a form of persecution. Additionally, his wife and his co-worker did state… Do you have a case saying that the detention alone without more comes to the level of persecution? Yes. In Guo v. Ashcroft, which is 361 F3D 1194, the petitioner was beaten and arbitrarily detained for 15 days, and this court… So the letters don't corroborate any beating or anything of that sort? Correct. It does not corroborate that, but it does establish the fact that he was incarcerated for 20 days. And if Mr. Ding's testimony was credited, you know, if the BIA or the IJ had considered this documentary evidence in the form of the statements, it could have potentially found Mr. Ding credible, which then would have fulfilled the requirements in the case that I just spoke about. And you're not wanting to send this back to the IJ? You just want to send it back to the BIA? Correct. I think the BIA definitely did not consider the documentary evidence, and that was on the record. Nowhere in the BIA's opinion is there any reference to the statements from Mr. Ding's wife or his coworker or any of the State Department reports that Mr. Ding provided. Had it considered this under the pre-Real ID standard, it could have concluded that Mr. Ding's credibility determination was not sufficient to support his claim for relief. Further, as I just mentioned, this prejudicial error itself requires reversal. But Mr. Ding also suffered another due process violation when the IJ inexplicably cut off his testimony regarding the passport issue. Was that raised with the BIA? It wasn't raised in the precise form of a due process violation, which is not required by this court for exhaustion. But he did, in his brief, point to the fact that the IJ engaged in speculation and conjecture in concluding that the passport issue was dispositive of his testimony's credibility. In other words, his claim was raised in a form that would put the BIA on notice that there was this potential due process violation, and the BIA did have an opportunity to pass on that, and so this issue is properly before the court. Your Honors, I think I've covered everything that I wanted to address. If you don't have any other questions, I'd like to reserve my time for rebuttal. All right. We'll hear from the government. May it please the court. Good morning. Can you hear me? Yes, we can. Thank you, Judge Pruda. I know we're probably not supposed to do this, but welcome to the law students. Truth be told, my wife is a graduate of Loyola Law School in Los Angeles, so I wish them all the best in the future. But not in this case. Well, Your Honor, I think the case speaks for itself. Well, let me ask you a question that Mr. Fernandez brought up. If the discrepancy in the date of the issuance of the passport and the time he claims to be incarcerated casts doubt on whether he was incarcerated at all, and that goes to the heart of the matter, because no incarceration, no persecution. But what about Mr. Fernandez's point that the BIA did not consider the evidence of his wife and the co-worker that he was incarcerated? They didn't even mention it. It says Mr. Fernandez. Do you agree with that? Well, Your Honor, if you look at those statements, you've got an initial statement from the wife and then what's known as a clarification statement about a week later, and then you have a statement from the co-worker. And you'll notice in all three of those statements, neither of them corroborate a passport or how it was obtained or that petitioner was ever beaten. And those are the two discrepancies. No, no, no. The question is not what the statements corroborate or don't corroborate at first. The question is whether the BIA considered them and mentioned them and discarded them. And the question is not whether the passport was issued. The question is whether the man was in jail. Now, the answer is, if you can, do you agree with Mr. Fernandez that both the wife and the co-worker's statements corroborate the fact that he was in jail? Well, no, Your Honor, because he's not to be believed. And the fact that the statement is self-serving because it's his spouse. It's serving. I think every piece of evidence which a party puts in should be self-serving. Otherwise, his attorney is a bad attorney, right? Yes, Your Honor. I think what we're calling a violent agreement on is, I would say at the very least, it goes to wait. I mean, it's just not sufficient to corroborate the story that he was detained when you've got that glaring error on the date. And the fact that the wife's statement says, oh, he was detained and he felt bad and so forth, does it overcome that? Well, the question I have is this. Does the wife's statement and the co-worker's statement say that he was in jail? I believe they use the word detained. But, yes, to that extent, they would corroborate that he's detained. Is that sufficient to overcome the discrepancies of his direct testimony? No. Well, the next question is, did the BIA mention the wife and the co-worker's statement and discard them as being insufficient? I believe they mentioned the wife's statement. I don't believe that they mentioned the co-worker's statement. What they did do was find that the IJ committed no clear error in her reveal of those statements and finding that those two significant discrepancies that go to the heart of the matter were enough to sustain an adverse credibility statement. The board isn't going to hash through each and everything that the IJ did. They looked at her decision for a clear error. And this court decides for itself, based on the highly differential review of the whole record, if the decision has enough specific cogent reasons that bear legitimate nexus to the finding or whether the record otherwise compels reversal. Do we have another case where we found harmless error when the BIA applied the wrong legal standard? I have a moment. I know we're checking briefs. Harmless error. Well, the case I was citing was Rivera v. McKay's for the whole idea that the panel decides for itself. We also have Ming Dai from the Supremes that talks about, you know, any finding by the board that is otherwise substantiated must be undisturbed. I can't think of a specific harmless error. I know Wren v. Holder's Petitioner's Council cited goes into some discussion on that. But it really comes down to the support in looking at what the board did. Is that substantiated by the record? And that standard doesn't change from the pre-real IJ or post-real IJ. The clear error review of the board to the IJ doesn't change under that. In fact, if you look at between the two of those, one always has to tell the truth. It's a clearly erroneous standard by the board. This court has a substantial evidence review, but have to say specific and cogent reasons. It's very deferential to the agency, and the evidence must compel an alternative finding. None of that changes under either. And that's where Petitioner went wrong. The second one is actually rather straightforward. One just has to tell the consistent story, and that's where Petitioner failed. The due process arguments as far as looking at the documents, for instance, the IJ itself specifically states that she considered the country conditions stuff, and I think that's on page 35 or 36 of the decision. And the country conditions evidence doesn't seem to stand, or Petitioner seems to think it stands for. If you look at all of it, I would start with maybe Exhibit 2, Tab 4, those are the news articles that were submitted with the application. They all talk about leadership, founders, activists, lawyers representing activists, not your worker bees, not a middle-aged couple practicing in the privacy of their home. If you look at the state report at Exhibit R12 and the report from 2015 at R11, again, you're not seeing anything in there going after the worker bees. As a matter of fact, most of them have to deal with alternative crimes. A lot of these people are going in for tax evasion. The founder of the Zomgog was actually facing rape charges. They were also advocating for resisting the government for seizure of group property and so forth. And again, it's all at the upper echelons, and that's why when the IJ was making her decision, what Petitioner's don't quote is on page 35, 34 and 35, where she says, at this point in time, I cannot believe, or the respondent has not shown, what happens to members of his particular Zomgog martial arts views in his home country. She's looking for particularized risk. Petitioner's name doesn't appear in any of the country documents. There's certainly nothing to show that he would have any greater risk than anybody else. And if you look at those reports, starting around 2012 and 2014, the government's easing off. They're saying, okay, if it's just your family in your house, that's okay. What we don't want is you going out into public, proselytizing, trying to poke a finger in the state's eye. I know that there's some reference to it being referred to as an evil sect, but again, when you look at those same state reports, the leaders were asking the members to deify them. They were saying that they had supernatural powers. Petitioner's wife, in her statement, says the power came out of Mr. Lee three times. And the state's concern there is she's dissuading people who may be ill from using conventional medicine. They say that in the state report. Mr. Ricconda, could I interrupt for a second? I've been reading the BIA's decision and also the IJ's decision, and I don't see any mention, any mention of the wife's statement or the court order statement. No mention. Can you point that out to me so I'll mention that? Maybe that'd be something. Take a look at ER 3 and 4. That's the BIA's decision. Yes, Your Honor, and I will state that if the BIA didn't mention it, it's not required to because it wasn't mentioned. That's slightly different from what you said before, that it was mentioned. I apologize, Your Honor. Again, when you go through these, I kind of confuse the BIA with the IJ, because obviously the IJ, when she's reciting the facts, is going through the types of things that are said. Yeah, but you see the IJ goes page after page saying respondent testified, respondent testified, but nothing about respondent's wife or respondent's co-workers. No, she's presumed to have considered all the evidence. Again, it's only required to mention it. It's probative and persuasive. I don't think she found it persuasive or corroborative. No, Mr. Fernandez is right. There's no mention of either the wife nor of the co-worker, and neither the IJ nor in the BIA decision. I just want to get the facts straight. Understood, Your Honor, understood. Again, you know, the overworked and underpaid government workers, it would be difficult to parse out each and every piece of evidence and each and everything that was said or was failed to say. That's a different position from the one you took earlier, but go ahead. Well, I guess what I'm saying is that if it's not persuasive, if it's not probative, then there would be little reason to mention it. And she didn't, obviously she didn't find it persuasive. Again, they don't mention anything about the passport or any physical harm. But they do mention about jail, that what we're concentrating on is jail. And what they don't overcome is the date on the passport which says March 11th. And the board and this court have repeatedly held, well, there's two explanations that are reasonable. It's not clear error for the agency to pick one over the other. That's not clear error, and that's the standard. Is it supported by substantial evidence? And can any reasonable adjudicator find as the agency did here? And under Minkai, the answer to that would be yes. And I take it your position is it's not required that the IJ or the PIA mention each piece of evidence submitted? That's correct. I don't think any court is really required to do that. It can be an exception if there's something that's just so probative and so persuasive that you forget to disregard it. If you have to say a lot of these two statements, the employer and the wife, do not mention anything about the two bases that the agency found were going to a heart of the matter and established adverse credibility. They corroborate other parts of the story, but not the two parts that matter, which is the basis of the finding. I would say that the agency here has given the petitioner more than sufficient due process. The reasons stated by the agency for its finding are specific. They are quotient. They are substantially supported by the record. There is nothing to compel an alternate finding on this matter. The possible explanations as to why the date might be there, whether that was ever raised before the IJ or the board, the petitioner had ample opportunity when he said, can you explain to me why this date says the 11th and you're on the 18th? He had no explanation. And he's counseled. That would have been the perfect time to say it. And that's really all we need. The standard here is clear error by the board and substantial evidence found by the support, and there's no reason to disturb the agency's findings. I have nothing further unless the board has further questions for me. No. Thank you. Thank you. Thank you, Your Honors. We have some time for rebuttal. Thank you, Your Honors. I think three quick points on this. First, as to the date discrepancy and whether that renders the BIA's legal error as to the credibility standard harmless. It doesn't, as this court has repeatedly recognized. The application of the wrong legal standard requires reversal. Cases on that include Asnor v. Ashcroft, Ornelas-Chavez v. Gonzalez. And, in fact, last year the Supreme Court in Calcutt v. FDIC, which you can find at 598 U.S. 623, pages 629 to 30, emphasized that when a legal error such as this occurs, the proper course is almost always to remand to the agency for application of the proper law. And, in fact, the narrow exception to that is when the proper law would mandate only one outcome. And whatever you have to say about the discrepancies in the record here, this is still a discretionary decision on the part of the board, even with its highly deferential clear error standard. There's not only one possible outcome on remand here. Second, as to the statements of the wife and co-worker. Do you have any explanation for the date discrepancy? Other than speculation? Well, no, we don't have an explanation. But we do have the Pre-Real ID Act standard, under which that discrepancy on its own is not sufficient to support. Or the discrepancy leads to the belief that he wasn't in jail at all, right? That goes to the heart of the matter. Yes, Your Honor, but that in itself is the speculation, and that's what the statements of the wife and co-worker actually address. You know, the discrepancy in the date on the passport, just the fact that it's different from his testimony, that alone is not a significant fact. The significance is whether it means he was not in jail at all. That's the real heart of the claim, right, whether he was in prison. And his wife and co-worker's statements do go to that. They do corroborate that. And they were not mentioned at all by the BIA or by the IJ. And lastly, as to the government's argument that only the leaders of Zongdong were persecuted, and that maybe it was for reasons other than their beliefs, I believe if you look at the news articles from pages 600 to I believe 618 of the record, they include one showing that the leader of Zongdong was granted asylum by the United States. So the agency did not necessarily believe that the Chinese government was persecuting him for or was after him for the crimes that it said it was. Second, there, this court has held that the persecution of people who protect members of a persecuted group also counts as persecution on a protected ground. And with that, if Your Honors have no further questions. Your point that this was a persecution on religious grounds? Not necessarily, Your Honor. I don't think Zongdong maps exactly on to a religion or a social group in the way that we conceive of it. It was a nexus. The nexus would be on account of a protected social group or a political opinion also, because by protecting members of the Zongdong group is expressing a political opinion against the exercise. It's a science of politics. No, but the protection of these people is essentially expressing the political opinion that the persecution of them is wrong. Is that a political group or just an exercise group or something? Your Honor, I see I'm out of time. If I could just respond to that. It appears to be a spiritual practice that is not quite a religion as we would understand Christianity or Judaism here, but rises to something above the level of just an exercise group. Thank you, Your Honors. We thank both sides for their hard work. That's the case of Yucheng Ding v. Pamela that's submitted. We thank the law school for taking on this case. Thank you.
judges: Siler, BEA, IKUTA